UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZENAIDA PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 3549 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| GLOBE GROUND NORTH AMERICA | ) | |
| LLC and JAMES PROFITT, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendants Globe Ground North America LLC and James Profitt's Motion for Summary Judgment. For the following reasons, the Motion is denied.

## I. BACKGROUND[1]

### A. Facts

Defendant Globe Ground North America LLC ("Globe") provides cargo and baggage handling, aircraft fueling, aircraft cleaning, snow removal, shuttle buses, and other services at airports around the country, including Chicago's O'Hare International Airport ("O'Hare").[2] Globe is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(b). At all relevant times, Plaintiff Zenaida Perez ("Perez") was a

---

[1] The court takes the facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

[2] While this case has been pending, Globe has changed its name to Penauille Servisair LLC. To avoid confusion, the court will refer to Defendant as "Globe."

1

dispatcher and Defendant James Profitt ("Profitt") was a ramp supervisor for Globe at O'Hare. Profitt was not Perez's supervisor. Profitt is approximately six feet tall, and weighs approximately two hundred fifty pounds.

In her deposition testimony, Perez indicates that Profitt carried out a long pattern of sexual harassment against her beginning on some unspecified date in 2001. On that date, Perez alleges that Profitt brought two black and white photographs of himself masturbating to Globe's O'Hare office, and handed these pictures to Perez (the "black and white photos incident"). Bonnie Erdman, another Globe employee, also testified in deposition that Profitt handed these pictures to Perez and Erdman on that date. These photographs were apparently "passed around" the Globe workplace, and as a result, more than one employee complained to Globe management. In response to this incident, E. Shane Predy ("Predy"), a Globe Manager, counseled Profitt that his actions violated Globe's sexual harassment policy, and were unacceptable. Predy then placed a letter into Profitt's personnel file on January 4, 2002. It is not clear whether this letter referenced the black and white photos incident or some other incident, but the letter unambiguously reprimands Profitt for his behavior, and insists that Profitt stop these sorts of actions.

> As a supervisor the Company expects a certain level of ethical and professional behavior from you. Although your actions were conducted on your own time, there are possible repercussions for the Company. Although the staff with whom you correspond have not complained nor do they appear to be offended we consider this irrelevant. Should they choose to, these individuals have sustainable grounds for a charge of sexual harassment. You have [sic] herewith notified that this type of behavior is unacceptable and must cease immediately.

Perez also testified that Profitt directed unwanted sexual attention towards her at Globe in other ways beginning in 2001, and continuing through November 2003. She indicated that

2

Profitt referred to her as his "sexy farm girl," said "good morning, sexy" to her "all the time," gave her unwanted back rubs, regularly sat in a chair next to her desk and stared at her, and began parking his car near hers in the employee parking lot. Finally, on November 6, 2003, someone placed two more pictures of Profitt masturbating into Perez's mailbox at Globe. These pictures displayed Profitt in full color (the "color photos incident"). Perez then immediately took the photos to her Duty Manager at Globe, Stan Vogdonos ("Vogdonos"). Perez testified that Vogdonos merely laughed in response to the photos. Globe does not deny that Vogdonos laughed when Perez showed him the photos, but Globe insists that Vogdonos assured Perez that he would take care of this situation, right after he got back from vacation.

One day prior to the color photo incident, on November 5, 2003, Perez sent an email to one of her supervisors, James Carpenter ("Carpenter"), in which she requested a meeting with him. Perez admits that on November 5, 2003, she did not intend to resign from Globe. Perez met with Carpenter on November 7, 2003, and complained about Vogdonos' behavior, but did not mention the color photo incident. In a memo she wrote regarding this meeting, however, Perez did explain this incident. During the meeting with Carpenter, Perez gave two weeks notice of her resignation at Globe. Her deposition testimony indicates that she decided to resign from Globe because she found the continuing sexual harassment, culminating with the color photo incident and Vogdonos' response, intolerable. Perez's last day of work at Globe was November 15, 2003.

## B. Procedural History

Perez filed a Charge of Discrimination with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC") on December 3, 2003.

3

In this Charge, Perez alleged that "[t]he sexual harassment consisted of Mr. Profitt putting pictures of himself masturbating in my mailbox. This was the second time in two years that these sexually offensive pictures were placed in my mailbox." Perez also alleged that "[d]ue to the sexual harassment and discriminatory conditions of my employment," she was constructively discharged from Globe. The EEOC issued Perez a right-to-sue letter on March 24, 2005.

Perez timely filed her initial Complaint against Globe on June 17, 2005. She then filed her First Amended Complaint on December 12, 2005. The First Amended Complaint alleges three causes of action: a hostile work environment based on sexual harassment, constructive discharge, and common law assault. On April 19, 2006, the court denied Profitt's Motion to Dismiss the assault count. Defendants filed their Motion for Summary Judgment on January 17, 2007. Plaintiff filed her Response on February 2, 2007, and Defendants filed their Reply on February 9, 2007. Defendants' Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

4

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Threshold Issues

Before the court explains its reasons for denying this Motion for Summary Judgment, it must address two threshold issues: whether Perez can bring suit for events that may have occurred more than three hundred days prior to the filing of her EEOC Charge, and whether

Perez can bring suit for actions not fully described in her EEOC Charge. Plaintiff brings the first two counts of her First Amended Complaint pursuant to Title VII. Under Title VII, charges must be filed with the EEOC within either one hundred eighty or three hundred days after the alleged unlawful employment practice occurs. 42 U.S.C. § 2000e-5(e)(1).[3] The Supreme Court has indicated that "discrete discriminatory acts are not actionable" if they occurred prior to this statutory period. AMTRAK v. Morgan, 536 U.S. 101, 112 (2002). However, the Supreme Court has also indicated that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Id. at 114. The AMTRAK court therefore held that

> It does not matter, for the purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Id. at 117. Since the color photos incident allegedly occurred on November 6, 2003, and Perez filed her EEOC claim on December 3, 2003, the court determines that it may consider events that occurred during the entire time period of her hostile environment claim.

The court also determines that it may consider events not fully described in Perez's EEOC Charge. In her EEOC Charge, the only specific incidents of sexual harassment Perez references are the photos incidents. The Seventh Circuit has indicated that "'[A] Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or

---

[3] Where a state such as Illinois has an agency with the authority to grant relief for an allegedly unlawful employment practice, an employee who initially files a grievance with that agency must file a charge with the EEOC within three hundred days of the alleged offense. See 42 U.S.C. § 2000e-5(e)(1).

6

reasonably related to the allegations of the charge and growing out of such allegations.'" Haugerud v. Amery Sch. Dist., 259 F.3d 678, 689 (7th Cir. 2001) (quoting McKenzie v. Ill. Dep't of Transportation, 92 F.3d 473, 481 (7th Cir. 1996)). Claims brought in a Title VII suit "'are not alike or reasonably related [to claims brought in an EEOC charge] unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*.'" Haugerud, 259 F.3d at 689 (quoting Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994)). Courts are instructed not to construe this rule in a rigid manner, however. A Title VII plaintiff may proceed with her claim "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." Cheek, 31 F.3d at 500; see also Vela v. Village of Sauk Village, 218 F.3d 661, 664 (7th Cir. 2000) ("There are cases where courts have looked beyond the four corners of the EEOC charge form.").

In this case, the court determines that the allegations in Perez's First Amended Complaint have a "reasonable relation" to the allegations in her EEOC Charge. First, the individual implicated in both her Complaint and EEOC Charge is the same: Profitt. The conduct described in the Complaint is a pattern of sexual harassment by this individual, two instances of which are described in the EEOC Charge. It is likely that if the EEOC had investigated Perez's Charge, it would have discovered the other instances of harassment alleged in the Complaint. It is true, as Defendants assert, that Perez did not outline every instance of harassment that she alleges occurred at Globe in her EEOC Charge. This, however, does not preclude her from bringing these allegations in her Complaint. "[B]ecause most EEOC charges are completed by laypersons

7

rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." Cheek, 31 F.3d at 500.

## C. Defendants' Motion for Summary Judgment

### *1. A Hostile Work Environment Based on Sexual Harassment*

Under Title VII, employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Courts have interpreted this statute to prohibit employers from forcing employees to "work in a discriminatory hostile or abusive environment." Shanoff v. Ill. Dept. of Human Serv., 258 F.3d 696, 701 (7th Cir. 2001) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In order for a sexually hostile work environment claim to survive a motion for summary judgment, the plaintiff must present evidence that creates genuine issues of material fact as to whether:

> (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.

Quantock v. Shared Mktg. Servs., 312 F.3d 899, 903 (7th Cir. 2002); Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462-63 (7th Cir. 2002); Haugerud, 259 F.3d at 696-97. In this case, the court determines that Perez has presented evidence that creates a genuine issue of material fact as to each of these four elements.

First, Perez has presented credible evidence she that was subjected to unwelcome conduct of a sexual nature: the black and white photos incident, the color photos incident, the unwanted back rubs, and Profitt's sexual comments. Second, the court has viewed the photos at issue in

8

this case, and there is not the slightest question that the conduct alleged is severe enough to create a hostile work environment. Third, the alleged conduct in question was obviously directed towards Perez because of her sex. See Quantock, 312 F.3d at 903. This work environment can be described as "both objectively and subjectively offensive," as Perez complained to her supervisor about the photos, and Globe reprimanded Profitt for his conduct. See Hilt-Dyson, 282 F.3d at 463.

As to the fourth element of a hostile work environment, employer liability usually arises when the harasser is the victim's direct supervisor, not merely a co-worker. Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002). In this case, Profitt was a supervisor at Globe, but Perez presents no evidence that he was *her* supervisor. "Because [Profitt] was not [Perez's] supervisor, [Globe] is liable for his conduct only if the company was 'negligent either in discovering or remedying the harassment.'" Id. at 356 (quoting Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998)). Here, Perez has presented evidence in the form of a letter placed into Profitt's personnel file that Globe knew of Profitt's inappropriate behavior as early as January 2002. Perez has also presented credible evidence that Profitt's harassing behavior continued unabated by Globe management until she resigned in November 2003. The court therefore determines that there is a genuine basis for employer liability in this case. See Parkins, 163 F.3d at 1032.

The court notes that the actions Perez asserts were directed towards her differ significantly from the conduct described in a recent Seventh Circuit opinion. In Yuknis v. First Student, Inc., the Seventh Circuit held that workplace behavior of a generalized sexually offensive nature, where this conduct was not specifically directed at the plaintiff, and where the

plaintiff was not "within the target area of the offending conduct," did not amount to actionable sexual harassment. – F.3d –, No. 04 C 6191 (7th Cir. March 28, 2007). Here, Perez asserts that Profitt directed numerous instances of unwanted sexual conduct specifically towards her. This is not simply a case of an employee being overly sensitive to a rough-and-tumble workplace. Perez alleges that she was singled out for discriminatory behavior on the basis of her sex, and she has presented credible evidence in support of her claims.

Because Perez has presented sufficient evidence to create a genuine issue of material fact as to whether she was subject to sexual harassment based on a hostile work environment, Count I of her First Amended Complaint survives Defendants' Motion for Summary Judgment. See Quantock, 312 F.3d at 903; Hilt-Dyson, 282 F.3d at 462-63.

## 2. *Constructive Discharge*

In order for a claim of constructive discharge to survive a motion for summary judgment, the plaintiff must demonstrate that there is a genuine issue of material fact as to whether her working conditions were "'so intolerable that a reasonable person would have felt compelled to resign.'" Patton v. Keystone RV Co., 455 F.3d 812, 818 (7th Cir. 2006) (quoting Pa. State Police v. Suders, 542 U.S. 129, 147 (2004)). "To advance such a claim, an employee's working conditions 'must be even more egregious than the high standard for hostile work environment because an employee is expected to remain employed while seeking redress.'" Roney v. Ill. Dep't of Transportation, 474 F.3d 455, 463 (7th Cir. 2007) (quoting Patton, 455 F.3d at 818)).

In this case, the court finds that Perez has presented sufficient evidence to demonstrate a genuine issue of material fact as to whether her working environment was so intolerable that she was forced to resign. This evidence includes her testimony that Profitt handed her photos of

himself masturbating, that someone placed photos of Profitt masturbating in her workplace mailbox, that Profitt continually made unwanted sexual comments to her, that Profitt sat close to her and stared at her, that Profitt had begun to park his car near her car in the employee parking lot, and that her supervisor's response to the color photos incident was merely laughter. Under these alleged conditions, Perez could reasonable have come to the conclusion that she had no other option but to quit immediately. Count II of the First Amended Complaint therefore survives Defendants' Motion for Summary Judgment. See Patton, 455 F.3d at 818.

### 3. Assault

Under Illinois common law, a civil assault is "an intentional, unlawful offer of corporeal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability to effectuate the attempt if not prevented." Parrish v. Donahue, 443 N.E.2d 786, 788 (Ill. App. Ct. 1982); see also Contreras v. Suncast Corp., 129 F. Supp. 2d 1173, 1182 (N.D. Ill. 2001). "A claim for assault must include an allegation of a reasonable apprehension of an imminent battery." Contreras, 129 F. Supp. 2d at 1182. Illinois law defines a civil battery as "the willfull touching of the person of another or a successful attempt to commit violence on the person of another." Parrish, 443 N.E.2d at 788.

In this case, the court finds that Perez has presented sufficient evidence to create a genuine issue of material fact as to whether Profitt's alleged actions created a "well-founded fear of imminent peril" in her. See id. Perez has presented credible evidence of a long pattern of alleged sexual harassment by Profitt. On those occasions where Profitt (a six foot tall, two hundred and fifty pound man) allegedly sat next to Perez while staring at her, or allegedly parked his car next to Perez's car, Perez could have had a "reasonable apprehension of an imminent

battery." See Contreras, 129 F. Supp. 2d at 1182. Count III of the First Amended Complaint therefore also survives Defendants' Motion for Summary Judgment.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: April 5, 2007